IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-MK-2564 (OES)

AHMED MOHAMMAD AJAJ,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
ROBERT A. HOOD,
C. CHESTER,
J. ZUERCHER,
THOMAS G. WERLICH,
MARK C. COLLINS,
LES SMITH,
LISA BRAREN,
T. CARPENTER, and
"FNU" HUGHSTON,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss, as supplemented **(# 119, 120, 190)**, the Plaintiff's response **(# 193)**, the Defendant's reply **(# 198)**, the Plaintiff's Sur-Reply **(# 200),** and the Plaintiff's citation to supplemental authority **(# 218)**.

## BACKGROUND

Plaintiff *pro se* Ahmed Mohammed Ajaj is an inmate at the United States Penitentiary, Administrative Maximum ("ADX"), in Florence, Colorado. On December 18, 2003, Mr. Ajaj and

three other inmates at ADX commenced this action by filing a *Bivens* Complaint **(# 3)** alleging five claims, four of which related to the nature of operational procedure at ADX, and one alleging an Eighth Amendment violation from exposure to secondhand smoke.  On March 8, 2004, the four plaintiffs filed an Amended Complaint **(# 19)**, consisting of 463 pages of allegations and exhibits.  On April 14, 2004, Magistrate Judge Michael Watanabe found **(# 28)** that the plaintiffs' Amended Complaint violated Fed. R. Civ. P. 8, and directed the plaintiffs to file a Second Amended Complaint that presented their claims more succinctly.  On June 25, 2004, Senior District Judge Zita Weinshienk reviewed the Second Amended Complaint **(# 49)** pursuant to 28 U.S.C. § 1915A, and dismissed **(# 53)** the plaintiffs' claims relating to operational issues at ADX, leaving only the secondhand smoke claim.  The case was then assigned to this Court.  In an October 12, 2004 Order **(# 107)**, this Court observed that many of the numerous pleadings and motions filed in the case– including the Second Amended Complaint– had only been signed by one of the four plaintiffs, and the Court directed the parties to file a supplemental signature page for the Second Amended Complaint, bearing the signature of each plaintiff, and required that all further papers in the case be signed by all plaintiffs proffering them.

In the interim, a dispute apparently arose among the four plaintiffs as to the direction the case should take.  Thus, rather than filing the supplemental signature page, on December 23, 2004, two of the plaintiffs,[1] including Mr. Ajaj, filed a Third Amended Complaint,[2] which

---

[1] Of the remaining two plaintiffs, one withdrew his claims, and the other interposed his own Third Amended Complaint, which this Court ultimately dismissed.  *See Docket* # 183.  At the same time, the Court dismissed the claims of Mr. Ajaj's co-plaintiff, leaving Mr. Ajaj as the sole remaining plaintiff in this action.

[2] Apparently because Fed. R. Civ. P. 15(a) appeared to require the plaintiffs to obtain leave of court before amending their pleadings at this time, the Clerk of the Court docketed the Third

dramatically reshaped the claims in this case. Mr. Ajaj's Third Amended Complaint alleges claims related to ADX procedures similar to those dismissed by Judge Weinshienk, as well as new Eighth Amendment claims relating to noise, lack of natural light, and so on. Indeed, the new Third Amended Complaint does not contain a stand alone claim relating to secondhand smoke; secondhand smoke is just one component of a smorgasbord of nuisances that constitute a broad, general Eighth Amendment claim.

The Defendants had previously filed Motions to Dismiss **(# 119, 120)** the Second Amended Complaint on grounds of failure to exhaust administrative remedies, failure to allege personal participation by the named Defendants, and qualified immunity. Following the filing of Mr. Ajaj's Third Amended Complaint, the Defendants supplemented **(# 190)** those motions, addressing Mr. Ajaj's new claims.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343.

## ANALYSIS

**A. Standard of review**

As always, the Court interprets Mr. Ajaj's *pro se* filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Ajaj's use of legal terminology and proper

---

Amended Complaint as a tendered document, but did not assign it a docket number. To the extent that an order of the Court is necessary to formally allow Mr. Ajaj to interpose the Third Amended Complaint, the Court grants leave to Mr. Ajaj to amend the Second Amended Complaint *nunc pro tunc* to December 23, 2004 and orders that the Third Amended Complaint, be docketed.

English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Ajaj from the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Ajaj according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), an inmate must fully exhaust available administrative remedies before commencing suit in federal court. The burden of showing exhaustion is on the plaintiff, to be established by either attaching copies of documents showing complete exhaustion, or by identifying with specificity the procedures invoked and their outcome. *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th Cir. 2003).

The exhaustion requirement applies to all suits regarding prison life, whether they challenge general circumstances or particular episodes. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even though the grievance procedure does not make available all of the remedies– such as monetary damages– the inmate desires. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The fact that an inmate might perceive the administrative procedure as futile is unavailing; futility is not an exception to the exhaustion requirement. *Id.* at n. 6; *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir.2002). An inmate that begins the administrative procedure but does not complete it has not adequately exhausted it. *Jernigan*, 304 F.3d at 1032. An inmate's grievances do not have to specifically articulate legal theories, but must be sufficiently specific as to the nature of the grievance to give prison officials notice of the

4

type of problem of which the inmate complains. *See Johnson v. Johnson*, 385 F.3d 503, 517-18 and n. 9 (5th Cir. 2004), *citing Porter*, 534 U.S. at 525 (one purpose of exhaustion requirement is to create an "administrative record that clarifies the contours of the controversy"); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Similarly, the grievance does not have to identify involved individuals with precision, particularly where the inmate complains of systemic problems, but where discrete acts are involved, the inmate may be required to identify, by name or function, the responsible individual(s). *Johnson*, 385 F.3d at 522-23. In this Circuit, the presence of an unexhausted claim requires dismissal of the entire action, not just the defective claim. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-92 (10th Cir. 2004).

The Federal Bureau of Prisons ("B.O.P.") maintains a four-step administrative remedy program, by which inmates such as Mr. Ajaj may raise grievances. 28 C.F.R. § 542.10 *et seq.* In Step 1, the inmate must attempt informal resolution of his concern with the appropriate B.O.P. staff member. 28 C.F.R. § 542.13. Assuming no satisfactory resolution is achieved, the inmate must file an Administrative Remedy Request (Form BP-9) within 20 calendar days of the event giving rise to the grievance. 28 C.F.R. § 542.14. If the inmate is dissatisfied with the outcome of the Step 2 grievance, the inmate must file an appeal to the Regional Director within 20 days of the denial of the Step 2 request. 28 C.F.R. § 542.15(a). The appeal must be on form BP-10, and attach a copy of the Step 2 request. Each denied grievance must be pursued in a separate appeal; appeals cannot be combined. *Id.* If the Step 3 appeal is unsuccessful, the inmate must file an appeal on Form BP-11 to the General Counsel within 30 days of the denial of the Step 3 request. 28 C.F.R. § 542.15(a). The appeal to the General Counsel is the final administrative stage, and upon its conclusion the inmate has exhausted the available administrative remedy scheme.

The Federal Tort Claims Act contains a similar exhaustion requirement for tort claims asserted against the United States. 28 U.S.C. § 2675.  Under that statute, "[a]n action shall not be instituted upon a claim against the United States for money damages . . .  unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing. . . ." 28 U.S.C. § 2675(a).  The prohibition on bringing "an action" before exhaustion is complete is similar to the prohibition of bringing "an action" that is unexhausted under 42 U.S.C. § 1997e(a).  Thus, this Court concludes that the reasoning in *Ross* also requires Mr. Ajaj to exhaust the administrative scheme contained in the Federal Tort Claims Act before asserting any claims under that Act.

Pursuant to the Court's instruction, the Defendants have directed their failure to exhaust argument to four claims in the Plaintiff's Third Amended Complaint.  Those claims are the First, Second, Tenth, and Twelfth Causes of Action.

  (i) Claim One

In the First Cause of Action, the Plaintiff alleges that his conditions of confinement at ADX are so atypical as to create a liberty interest, of which he was deprived without Due Process when he was transferred to ADX.  Specifically, he contends that he was not provided notice of the reasons for his transfer to ADX or an opportunity to be heard before that transfer was effectuated.  In addition, the Plaintiff appears to contend that the lack of defined procedures by which inmates at ADX can be admitted to a "step-down" program which may ultimately render them eligible for transfer to a less-restrictive facility are arbitrarily applied.  In their supplement to the Motion to Dismiss, the Defendants identify grievances 290668 and 363825 by Mr. Ajaj as potentially relating to this claim.

Although the Defendants did not attach copies of the cited grievances, the Court has located grievance no. 290668 in Mr. Ajaj's response to the motion.  In that grievance, Mr. Ajaj asserts that false and inaccurate information was contained in a progress report, and that such false information "resulted in my transfer to ADX."  Mr. Ajaj also asserts in the grievance that, by not being permitted to review and sign his progress report, "I was denied the B.O.P. mandatory procedural due process rights."  However, when Mr. Ajaj appealed the denial of that grievance to Step 3, he merely alleged that his progress report was "politically motivated," "capricious," and "retaliatory."  Mr. Ajaj reiterates that the report was false and failed to disclose details about the Plaintiff's medical condition that made ADX an unsuitable facility.  Nowhere in the appeal does the Plaintiff indicate that he was challenging the fact that he was not permitted to review and sign the progress report, nor does he assert that he was entitled to some form of pre-transfer hearing or other procedural protection that was denied.

A reasonable prison official reviewing Mr. Ajaj's Step 3 appeal would consider it a request for reconsideration of his transfer based on corrected information, not a challenge to the sufficiency of the process he received at the time of the transfer to ADX.  The Step 3 appeal failed to give prison officials fair notice that Mr. Ajaj was asserting some right to a pre-transfer hearing. *See Johnson*, 385 F.3d at 518 (inmate's grievance alleging assaults by fellow prisoners failed to exhaust claim that such assaults were racially motivated). Under these circumstances, the Court cannot say that a procedural due process claim was fairly presented to Bureau of Prisons at Step 3, and thus, grievance no. 290668 failed to fully exhaust Mr. Ajaj's First Claim for Relief.

The Defendants have also identified grievance no. 363825 as relating to the First Claim for relief.  That grievance alleges that B.O.P. policies "provide inmates with a high level of procedural

7

protection prior to their transfer to ADX," and that Mr. Ajaj had not been afforded many of those protections prior to his transfer. The B.O.P. denied this grievance as being an untimely challenge to Mr. Ajaj's transfer, which had occurred several years earlier. Notably, this grievance was filed on or about January 10, 2005, after the Third Amended Complaint (and long after the original Complaint in December 2003, when the due process claim was originally raised) had been tendered. Under these circumstances, this grievance failed to fully exhaust the administrative procedure prior to Mr. Ajaj asserting this claim, and thus, is insufficient to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

The Court has reviewed Mr. Ajaj's declaration in response to the motion, but it does not identify any other grievances as relating to the claims asserted in the First Cause of Action. Accordingly, the Court finds that Mr. Ajaj's First Cause of Action is not exhausted. Under *Ross*, this is a sufficient basis to dismiss the entire Third Amended Complaint. 365 F.3d at 1189-92. However, for purposes of a complete record on appeal, the Court will also briefly address the sufficiency of exhaustion for the remaining claims.

(ii) Claim Two

Claim Two asserts, in its entirety, "The Defendants' policies and practices substantially burden the Plaintiff's right to freely exercise [his] religion in violation of the First Amendment, the Religious Freedom Restoration Act, and the Religious Land Use and Institutionalized Persons Act." (Citations omitted.) Although the claim itself does not identify the nature in which Mr. Ajaj's religious exercise is allegedly burdened, paragraph 41 of the Third Amended Complaint alleges that Mr. Ajaj is prohibited from engaging in congregate religious services, and paragraph 44 alleges denial of access to prison chaplains.

The Defendants have identified timely grievances no. 254512, 302265, and 304468 as relating to this claim. Grievance no. 254512 involves claims that Mr. Ajaj was not permitted to receive visits from the prison chaplain or an Imam, nor to attend congregate Jumah services. The events claimed in the grievance occurred between September and November 2001, at a time when Mr. Ajaj was admittedly not housed in ADX, and thus, grievance no. 254512 only serves to exhaust his claim against the B.O.P., not against any named individual Defendant, all of whom work at ADX, and who cannot be said to be complicit in an unconstitutional policy in another prison. The Court is unable to locate grievance 302265 in Mr. Ajaj's filed materials, and thus, cannot find that that grievance exhausts Claim Two as against any of the individual Defendants. *See Steele*, 355 F.3d at 1209-10 (burden is on inmate to establish exhaustion). Grievance no. 304468 concerns contamination of food with pork products, and is not a claim asserted in the Third Amended Complaint. Mr. Ajaj does not identify any additional grievances that allegedly exhaust Claim Two. Accordingly, the Court finds that Claim Two is exhausted in certain respects as against the B.O.P. generally, but not as against any individual Defendant named here. To the extent Mr. Ajaj asserts Claim Two against any individual Defendant, his failure to exhaust Claim Two against these individuals is fatal.

      (iii)  Claim Ten

Claim 10 asserts that the Defendants confiscated Mr. Ajaj's personal property without affording him due process. The Defendants acknowledge that Mr. Ajaj filed two grievances, 287514 and 292038, with regard to this issue, but contend that the grievances do not request a hearing for the return of the property. Grievance no. 287514 speaks generally about a complaint of "confiscation of personal property," to which the B.O.P. responded that the property had been

9

placed in an evidence locker. Notably, the Step Three response from the B.O.P. to this grievance states "Your request for administrative remedy does not reflect that you requested a confiscation form from staff. If you wish to pursue this matter, you must first file a request for administrative remedy locally through the warden at your institution." This response suggests that the B.O.P. did not consider Mr. Ajaj to have completed the administrative remedy scheme regarding his claim seeking the return of the property, and thus, the purposes of the exhaustion requirement would not be fulfilled by permitting Mr. Ajaj to bring suit without having availed himself of the remedy suggested by the B.O.P. Accordingly, no. 287514 does not suffice to exhaust Mr. Ajaj's remedies.

Grievance no. 292038 requests that the B.O.P. return all of Mr. Ajaj's confiscated property. Included in that grievance was a complaint that the staff did not provide Mr. Ajaj with a Confiscation Form. The grievance was denied at each stage by the B.O.P. because it duplicated claims in no. 287514. Although the Court recognizes that the suggestion that Mr. Ajaj request a Confiscation Form seems inconsistent with the B.O.P.'s denial of a grievance that complained that he was not given such a form, the fact remains that the B.O.P.'s final ruling in no. 287514, suggesting that Mr. Ajaj request a form, came after the B.O.P. had denied no. 292038. In these circumstances, even though it may have seemed futile, Mr. Ajaj was obligated to attempt to obtain a Confiscation Form to seek the return of his property before this claim could be deemed exhausted. *Jernigan*, 304 F.3d at 1032-33 (perceived futility does not excuse failure to exhaust). Accordingly, the Court finds that Claim 10 was not exhausted.

    (iv) <u>Claim Eleven</u>

Finally, Claim 11 asserts a claim under the Federal Tort Claims Act for damage to some of Mr. Ajaj's confiscated property.  Under the Federal Tort Claims Act, "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."   28 U.S.C. § 2675 (emphasis added).  Mr. Ajaj filed a tort claim with the Bureau of Prisons on June 17, 2004, and that claim was denied on December 1, 2004.  The Defendants assert that exhaustion was thus not completed at the time the original Complaint was filed on December 18, 2003, but fail to recognize that the original Complaint filed on that date did not purport to assert a claim for property damage under the Federal Tort Claims Act.  Because this claim did not arise from the same set of facts asserted in the original Complaint, it does not relate back to the filing date of that Complaint for purposes of determining the date the claim was interposed.  Fed. R. Civ. P. 15(c).  Because the tort claim was asserted by Mr. Ajaj for the first time in the Third Amended Complaint on December 23, 2004, this claim is properly exhausted.

## CONCLUSION

Because Mr. Ajaj failed to exhaust his First and Tenth Claims for Relief under §1997e(a) against all Defendants, and failed to exhaust his Second Claim for Relief against  those individual Defendants against whom it is asserted, the entire Third Amended Complaint must be dismissed without prejudice under *Ross*.  365 F.3d at 1189-92.  The Court need not address the remaining arguments in the Defendants' motion. The Defendants' Motion to Dismiss, as supplemented (**# 120, 190**), is **GRANTED**.  Mr. Ajaj's  Third Amended Complaint is **DISMISSED** without

prejudice.  Because Mr. Ajaj's claims have been dismissed and there are no remaining plaintiffs in this action, the Clerk of the Court is directed to close this case.

Dated this 19th day of October, 2005.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge